In the Matter of the Estate of Henry Schonhoff, Deceased.
Robert H. Bastert, Plaintiff-Appellant, v. Mary Hild, Administrator of the Estate of Henry Schonhoff, Deceased, Defendant-Appellee.

Gen. No. 10,664.

Fourth District.

November 22, 1965.

Elmo E. Koos, of Peoria, for appellant.

Howard L. Snowden, of Quincy, for appellee.

SMITH, P. J.

Plaintiff-appellant filed his claim in probate for personal services rendered the decedent at the rate of $20 per week for four years, fifty-one weeks, in the total sum of $5,180. The trial court found the evidence insufficient to support the claim; the services were gratuitous; no contract for payment existed; there was no foundation for the reasonableness of the charges made, and denied the claim. This appeal followed.

Claimant and the decedent were longtime friends. Decedent was a bachelor, sixty-three years old at death, and lived on a small tract where he engaged in truck farming to a small degree. There was no water in the house and heating and cooking was by means of a wood stove. Decedent was nursery man for the Quincy Park District with a salary of about $80 for each two weeks. Witnesses testified for the claimant that they had seen claimant carry water; feed the chickens, dogs and cats; split and carry wood and water; feed and bed down decedent's mule; work with tomatoes and potatoes, and used his automobile to take decedent to the bank, grocery store and town. Three witnesses saw claimant doing some of these things once or twice a week. Another testified that it was practically an every day occurrence. Witness Cory testified that during the summer of 1962, claimant asked decedent, "When you going to pay me for what I'm doing?" Decedent said, "I'll make it right with you." Witness Schoenekase testified that he and the decedent talked during the summer of 1963, and on one occasion decedent said: "You don't have to worry about it. I'm going to pay him for it" and again that "he was going to pay Bob [claimant] very well for what he was doing." They testified that the going price for such

services was $1.25 to $1.50 per hour. We find no testimony as to the number of days or the number of hours on each day that were devoted to these services. The record is silent as to any payment ever having been made. At this point claimant rested and a motion to dismiss the claim was denied.

The estate then presented evidence showing that on November 21, 1962, claimant and his wife entered into a bond for deed with the decedent whereby they contracted to buy some property for $2,000 from him. Terms stated were: $100 down, $400 on March 1, 1963, and $500 on March 1 for the next three successive years. Claimant and his wife paid the $100 and the $400. On March 4, 1963, the deed was delivered to claimant and his wife by the escrowee bank and they receipted the bank for it. The written receipt follows a written authorization over the signature of the decedent stating that he had accepted a $1,500 note from claimant and his wife as payment in full for their obligation under the bond for deed. The deed was recorded the next day. The record is silent as to the whereabouts of this note. The written authorization and the receipt were received in evidence by the trial court for the limited purpose of showing the conduct of the parties and not for the purpose of establishing a counterclaim by the estate against the claimant.

Assuming, without deciding, that the claimant's evidence made out a prima facie case and that the trial court was thus correct in denying the motion to dismiss the claim at that stage, we now consider the conduct of the parties and its effect, if any, on the problem at hand. Notwithstanding claimant's contention in the trial court that the real estate transaction was wholly separate and distinct from the services rendered, the trial court did not so regard it nor can we. We see conduct of both the claimant and the decedent strangely inconsistent with the statements attributed to them. In November 1962,

claimant and his wife agreed, in writing, to pay decedent $2,000 and did then make a $100 down payment, when, as is now claimed, decedent owed almost $4,000 for services rendered. In March 1963, claimant paid decedent $400, when, as is now claimed, decedent owed him well in excess of $4,000 for services rendered. Four days later, the deed was delivered to claimant by escrowee bank at the direction of the decedent. If paid, surely claimant would have some evidence of that fact. Was a $1,500 note given? If so, where is it? If not paid, it is unlikely that claimant would not have treated it as a credit on his claim of $5,180. Why would decedent accept these payments if he then felt he was indebted to claimant for services rendered? Why did he demand and receive this contract if he then felt he was indebted to claimant for services rendered? The record is silent. This conduct stands wholly unexplained.

It is truism to say that actions speak louder than words. We think, as the trial court evidently thought, that these actions by each of the parties speak loud and clear. It precludes the thought that the claimant then expected payment or the thought that the decedent then expected to pay for services rendered. Conversely, if one was then expecting payment for services and the other then expected to pay, it would seem natural, usual and in conformity with ordinary human conduct, that all this be considered before the execution of the written contract. In the absence of explanation indicating otherwise such a conclusion seems inescapable.

██ ██ Where a claimant borrows from a decedent, a presumption arises that a claim based on services previously rendered has been paid, or that the claimant never intended to charge for such services. Ball v. Sieverling, 130 Ill App 89; Seacord v. Matteson, 56 Ill App 439. This record and the conduct of the parties support that presumption rather than destroy it. We cannot say that the conclusions of the trial court are

against the manifest weight of the evidence and the reasonable inferences to be derived therefrom. It follows that the trial court was correct in its conclusions and its judgment is affirmed.

Affirmed.

TRAPP and CRAVEN, JJ., concur.